MITSUBOSHI BELTING LTD. AND MBL (USA) CORP., PLAINTIFFS *v.*
UNITED STATES, DEFENDANT

Court No. 93–09–00640

(Decided March 12, 1997)

*Sonnenberg, Anderson & Rodriguez (Steven P. Sonnenberg, Paul S. Anderson* and *Jacqueline M. Paez)* for the plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Michael S. Kane);* and *Stacy J. Ettinger,* U.S. Department of Commerce, of counsel, for the defendant.

MEMORANDUM AND ORDER

AQUILINO, *Judge:* Following denial herein of their motion to amend the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan; Final Results of Antidumping Duty Administrative Review,* 58 Fed. Reg. 44,496 (Aug. 23, 1993), per the court's slip op. 94–23, 18 CIT 98 (1994), the plaintiffs move for judgment on the record as filed by the agency.

To quote from that opinion, familiarity with which is presumed, amendment had been sought

> to include the complete agency record on file with the * * * ITA * * * at the time that the challenged determination was being conducted. This would include the agency record relating to the petition filed by The Gates Rubber Company, the agency record relating to the original less-than-fair-value investigation which led to the issuance of the antidumping order, and the agency record relating to the [prior] administrative review * * * period * * *.

18 CIT at 100. The motion for this relief showed, and the court found, that the plaintiffs had forsaken any judicial review of the results of that previous administrative review. *See* 18 CIT at 102. Furthermore, during the administrative proceedings now at bar,

> MBL did not respond to the ITA's questionnaire and * * * thus acknowledged that the agency's resort to best information otherwise available was authorized. *See* 58 Fed.Reg. at 44,496. Moreover, the plaintiffs had an opportunity to submit information contained in the records of prior proceedings during the review in question but did not do so.

18 CIT at 103. Be those as they were, in their complaint and now motion for judgment thereon, the plaintiffs pray that the court direct the ITA

> to consider all the relevant information available to the agency in its determination of what constitutes best information otherwise available in the Second Administrative Review, including that information provided by the plaintiffs in the First Administrative Review[,]

to recite their proposed form of remand order.

The court's jurisdiction to grant such relief is based on 28 U.S.C. §1581(c) and §2643(c)(1).

## I

The plaintiffs explain that their merchandise is covered by the "all other" antidumping rate of 93.16 percent in the ITA's determination of sales at less than fair value[1] which was derived from the petition as best information otherwise available within the meaning of 19 U.S.C. § 1677e(c) (1993). The gravamen of their complaint is pleaded as follows:

31. The * * * Final Determination in the Second Administrative Review did not state whether the information available from the First Administrative Review was considered by the ITA as possible "best information otherwise available" * * *.

32. The * * * Court * * * held[] in *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed[.] Cir. (T) 1990), that the ITA must "obtain and consider the most recent information in its determination of what is best information."

33. The most recent information obtained by the ITA is the information submitted by plaintiffs in response to the * * * questionnaires in the First Administrative Review.

34. The * * * Court * * * stated in *Rhone Poulenc, Inc.* * * * that[,] "to be properly characterized as 'punitive,' the agency would have had to reject a low margin in favor of high margin information that was demonstrably less probative of the current conditions." *Id.*[,] 899 F.2d at 1190.

35. The information relied upon by the ITA * * * in the Second Administrative Review is demonstrably less probative of [its] circumstances * * * than the information provided by plaintiffs during the First Administrative Review.[2]

36. The ITA's choice of "best information otherwise available" is punitive and frustrates the remedial purpose of the antidumping statute.

The plaintiffs also complain that the time taken by the agency to render its first review determination denied them the

opportunity to make an informed decision as to whether or not they wanted to request an administrative review for the [second] period * * *.

Complaint, para. 42.

At the time of that later review, the Trade Agreements Act of 1979, as amended, provided that the ITA, in making its determination,

shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form

---

[1] *See* 54 Fed.Reg. 25,314 (June 14, 1989). The rate set for such merchandise as a result of the agency's first administrative review was 52.60 percent. *See* 58 Fed.Reg. 30,018 (May 25, 1993).

[2] According to the plaintiffs, this is due to the fact that that information came from the petition. But the defendant counters that assigning the rate calculated for that first period "would mean that MBL has succeeded in manipulating the results of the second administrative review through its lack of cooperation." Defendant's Memorandum, p. 15.

required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(c) (1993). *See also* 19 C.F.R. §353.37 (1993). And in the determination at bar, the agency reiterated that its policy pursuant to this law has been to assign to an uncooperative party as a dumping margin (1) the highest rate found for any firm in the original investigation or previous administrative review or (2) the highest rate found in the current review. 58 Fed.Reg. at 44,496.

While courts have affirmed this approach[3], the plaintiffs attempt to rely on a statement in the legislative history of the statute to the effect that the ITA "should always use the most up-to-date information available"[4], as interpreted by the court of appeals in *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed.Cir. 1990). This reliance is of little avail, as that court opined that

> it does not follow * * * that the ITA must *equate* "best information" with "most recent information." What is required is that the ITA obtain and *consider* the most recent information in its determination of what is best information.

899 F.2d at 1190 (emphasis in original). Moreover, for the ITA's approach

> to be properly characterized as "punitive," the agency would have had to reject low margin information in favor of high margin information that was demonstrably less probative of current conditions. Here, the agency only *presumed* that the highest prior margin was the best information of current margins. Since Rhone Poulenc offered no evidence showing that recent margins were more probative of current conditions than the highest prior margin, the agency found the highest prior margin to be the best information otherwise available.
>
> We believe a permissible interpretation of the best information statute allows the agency to make such a presumption and that the presumption is not "punitive." Rather, it reflects a common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced *current* information showing the margin to be less. The agency's approach fairly places the burden of production on the importer, which has in its possession the information capable of rebutting the agency's inference.

*Id.* at 1190–91 (emphasis in original, footnote omitted).

Despite plaintiffs' attempt to distinguish this action, they do not show that their circumstances or the policy applied differ materially from those addressed in *Rhone Poulenc*. And despite their claims that reliance on information from the original investigation is punitive and that data from the first review were more probative, the plaintiffs point to no evidence on the record at bar in support of them. Hence, this court

---

[3] *See, e.g., Allied-Signal Aerospace Co. v. United States*, 996 F.2d 1185 (Fed.Cir. 1993).

[4] H.R. Rep. No. 317, 96th Cong., 1st Sess. 77 (1979).

cannot accept the contention that it "would have been a useless waste of time and money"[5] to require resubmission of data already being considered by the agency as part of another administrative record.

It is well-settled that the ITA's assignment of the highest prior margin prevents rewarding of uncooperative respondents. *See, e.g., Allied-Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1192 (Fed. Cir. 1993); *Florex v. United States*, 13 CIT 28, 33, 705 F. Supp. 582, 589 (1989). That is, a party cannot control the results of the administrative process via its own unresponsiveness. *See, e.g., Pistachio Group of the Ass'n of Food Ind. v. United States*, 11 CIT 668, 679, 671 F. Supp. 31, 40 (1987).

> * * * [A]n assumption is made that if that party possessed probative information justifying a lower rate than the highest previously published rate, it would have offered that information to Commerce as a matter of its economic interest. When the party does not respond, it is reasonable to presume that accurate information regarding that aspect of the duty calculation would have led to an assessment of equal or greater magnitude than the highest prior margin.
>
>        *           *           *           *           *           *           *
>
> This Court has held that the choice of BIA need not be the "best" information the agency could have possibly acquired* * *. [Instead, t]he "Court must uphold the ITA's use of best information available if the use of that data is supported by substantial evidence in the record and otherwise in accordance with law."

*Saha Thai Steel Pipe Co. v. United States*, 17 CIT 727, 732, 734, 828 F. Supp. 57, 61–63 (1993), quoting *N.A.R, S.p.A. v. United States*, 14 CIT 409, 416, 741 F. Supp. 936, 942 (1990).

Although the plaintiffs claim that the ITA failed to show a rational relationship between its choice and their pricing, the agency relies on a "common sense inference" that the highest margins are the most probative since the plaintiffs have not rebutted this inference. *See* Defendant's Memorandum, pp. 18–19. When the agency determines that reliance on best information otherwise available is necessary, it has discretion in determining upon what to rely. Here, based on the record presented, the court concludes that the exercise of that discretion was in accordance with law.

## II

In view of the foregoing, as well as of the decision in *Bando Chemical Industries, Ltd. v. United States*, 17 CIT 798 (1993), *aff'd*, 26 F.3d 139 (Fed.Cir. 1994), affirming the underlying, contingent material-injury determination of the International Trade Commission[6], plaintiffs' motion for judgment on the ITA record must be denied and their action dismissed. Judgment will enter accordingly.

---

[5] Plaintiffs' Reply Brief, p. 7. The court notes in passing that this and the other written submissions are of such quality as to obviate any need to burden the parties with oral argument, the formal motion for which is thus hereby denied.

[6] *Cf.* Plaintiffs' Brief, pp. 23–24; Plaintiffs' Reply Brief, Point II; letter of Steven P. Sonnenberg, Esq. to the court (March 1, 1995).